# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

WOODROW B. JOHNSON, )
)
        Plaintiff, )
)
v. ) Case No. CIV-14-203-SPS
)
CAROLYN COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## OPINION AND ORDER

The claimant Woodrow B. Johnson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born October 21, 1969, and was forty-two years old at the time of the administrative hearing (Tr. 27, 139). He completed the eighth grade, and has worked as a farm worker, construction worker, and tree cutter (Tr. 20, 36). The claimant alleges he has been unable to work since his application date of March 31, 2011, due to seizures, headaches, depression, and fatigue (Tr. 174).

### Procedural History

On March 31, 2011, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 7, 2013 (Tr. 11-22). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except that he had to avoid all exposure to unprotected heights and moving machinery, was limited to simple and repetitive tasks, and required a sit/stand option at will without leaving the workstation (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not

disabled because there was work he could perform, *i. e.*, silver wrapper, security clerk, bench assembler (Tr. 21).

## Review

The claimant contends that the ALJ erred: (i) by failing to account for his documented neck impairment and further failing to consider his nonsevere impairments of headaches, visual problems, and high blood pressure at steps four and five of the sequential analysis, and (ii) by failing to properly assess his pain and credibility. The Court agrees that the ALJ failed to properly assess the claimant's impairments at step four, and the decision of the Commissioner is therefore reversed.

The ALJ determined that the claimant had the severe impairments of major depressive disorder, syncope and seizures, and lower back impairment, as well as the nonsevere impairments of headaches, vision, or high blood pressure, but did not discuss the claimant's neck at step four (Tr. 13). The medical evidence reflects that based on complaints of chronic headaches for over a year the claimant underwent an MRI of the brain on April 2, 2010, with a December 10, 2008 MRI for comparison, and the impression was that it was a normal MRI of the brain (Tr. 253). He then underwent a sleep-deprived EEG of the brain on April 22, 2010, which also appeared to be normal (Tr. 273). He largely received medical treatment through the Choctaw Nation for hypertension, headaches, and lumbar pain (Tr. 294). Due to syncopal episodes, in 2010 he was advised to avoid activities in which sudden loss of consciousness could be hazardous, including operating motor vehicles and equipment (Tr. 296, 311).

On June 6, 2011, a state reviewing physician determined that the claimant's depression was a nonsevere impairment, and that he had only mild limitations in the areas of functional limitations and no episodes of decompensation (Tr. 356-366). His notes stated that the claimant was affected more by his physical condition (Tr. 368). A second reviewing physician determined that the claimant retained the ability to perform medium work, with some additional limitations, *i. e.*, he could never climb ladders/rope/scaffolds, and only frequently climb ramp/stairs, balance, stoop, kneel, crouch, or crawl due to his syncope (Tr. 371-372). Additionally, he indicated that the claimant needed to avoid all exposure to hazards for the same reason (Tr. 374).

On March 4, 2012, the claimant presented to the ER with a head injury after being kicked in the face by a bull (Tr. 393). On discharge two days later, he was assessed with status post blunt trauma to the face, minor cortical contusion stable, fracture of the anterior nasal spine with no displacement and minimal deviation of the nasal septum, and CT evidence suggesting nondisplaced fracture versus nonunion of C7 (Tr. 411). A CT of the cervical spine conducted on March 26, 2012 indicated that the claimant had no acute changes, with an anatomic variant nonunion apophysis of the spinous process of C7 (Tr. 406).

The claimant also received mental health treatment at Choctaw Nation Health Center. Although the treatment notes were suppressed for confidentiality, the diagnosis indicates that he was treatment for major depressive disorder, recurrent, which was described as moderate in April 2011 but mild by March 2012 (Tr. 428-441).

As an initial matter, the Court notes that the ALJ gave little weight to the opinion of the state reviewing physician with regard to the claimant's mental impairments due to his history of depression and the claimant's subjective reports. The ALJ's assigned RFC that included a limitation to simple and repetitive tasks is presumably a psychologically-based limitation, but here the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for *this* claimant's severe mental impairment. *See, e. g.*, *Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). The Court acknowledges that the record in this case is sparse with regard to evaluations of the claimant's mental impairments, as well as the ALJ's broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). The ALJ should nevertheless consider recontacting the claimant's treating physicians, requesting further medical records, and/or ordering a consultative examination to properly account for the claimant's mental impairment. *See* 20 C.F.R.

§§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record, but an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record. *See Hawkins*, 113 F.3d at 11666, 1168. The ALJ could also request that a state agency physician review the record. Such a review or examination would have been helpful in this case, because in its absence the ALJ had no opinions as to the claimant's mental RFC. The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record.

Furthermore, the claimant correctly argues that as to his physical impairments, the ALJ failed to properly account for his neck impairment. In his written opinion, the ALJ gave the state reviewing physician's opinion little weight as to his physical impairments because there was no examination of the claimant and the opinion did not account for the effects of his C7 non-union (Tr. 19). However, the ALJ did not even mention the nonunion at C7 at step two, and did not discuss it in relation to the claimant's RFC, singly or in combination with the claimant's other impairments, other than to discredit the state physician's opinion (Tr. 19). This was further error. *See Haga v. Astrue*, 482 F.3d

1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). The ALJ determined that the claimant had other severe impairments, so any failure to find the nonunion at C7 is considered harmless error. Nevertheless, the ALJ was not entitled to ignore it completely. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis.") [emphasis in original] [citations omitted]. Instead, the ALJ should have considered the combined effect of *all* the claimant's impairments (including his numerous nonsevere impairments) in assessing his RFC. *See Hill*, 289 Fed. Appx. at 292 ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir.

2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error.").

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**